### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF INDIANA
### SOUTH BEND DIVISION

| | | |
|---|---|---|
| PEGGY TRYTKO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:17-CV-175-JD-MGG |
| | ) | |
| US BANK HOME MORTGAGE, | ) | |
| | ) | |
| Defendant. | ) | |

### REPORT AND RECOMMENDATION

On September 20, 2017, Defendant[1] filed its Combined Motion to Vacate Default

Under Rule 55(c) and Motion to Dismiss Under Rules 12(b)(4), (5), and (6). On October

3, 2017, Plaintiff filed her response in opposition to Defendant's Combined Motion. The

instant Combined Motion became ripe on October 10, 2017, when Defendant filed its

reply brief. On April 27, 2018, Defendant's Combined Motion was referred to the

undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Fed.

R. Civ. P. 72(b), and N.D. Ind. L.R. 72-1(b). [DE 39]. For the reasons stated below, the

undersigned recommends that Defendant's Combined Motion be **GRANTED**. [DE 16].

### I.    RELEVANT BACKGROUND

On February 28, 2017, Plaintiff filed her complaint against Defendant raising

thirteen different claims and seeking over $750,000 in damages. Defendant appears to

have serviced Plaintiff's mortgage and collected monthly fees from Plaintiff for the care

---

[1] In the instant motion, Defendant identifies itself as U.S. Bank National Association and indicates that it was incorrectly sued as U.S. Bank Home Mortgage. [DE 16 at 1].

and maintenance of her property. Plaintiff's complaint includes claims against Defendant for Fraud (Count I), Fraudulent and/or Intentional Misrepresentation (Count II), Negligence (Count III), Negligent Misrepresentation (Count IV), Negligent Loan Servicing (Count V), Negligent Entrustment (Count VI), Breach of Contract (Count VII), Breach of Implied Covenant of Good Faith and Fair Dealing (Count VIII), Conversion (Count IX), Improper Calculation of Mortgage Payments, Interest and/or Late Fees (Count X), Violation of Fair Debt Collections Practices Act (15 U.S.C. § 1692 et seq.) (Count XI), Intentional and/or Negligent Infliction of Emotional Distress (Count XII), and Punitive Damages (Count XIII). [DE 1].

On May 8, 2017, Plaintiff filed an Affidavit for Proof of Service signed on April 17, 2017. [DE 8]. The Affidavit was signed by Plaintiff's counsel's paralegal and stated that she had "prepared a standard overnight FedEx to the Defendant, US Bank Home Mortgage, that included the Complaint and Summons" for this cause on March 16, 2017. [ *Id.* ]. Attached to the Affidavit was a FedEx tracking document indicating that the package, including the Complaint and Summons, was addressed to US Bank Home Mortgage at 4801 Federica Street, Owensboro KY 42301 and delivered on March 17, 2017. [DE 8-1]. The delivery was signed for by Tyler Moore, an employee of a temporary staffing agency that is a subcontractor to a vendor of Defendant, who worked in the mail room at Defendant's loan servicing and payment processing facility at 4801 Federica Street in Owensboro ("the 4801 Facility"). [DE 17-1 at 3]. Moore's duties at the 4801 Facility include opening mail and scanning documents. [*Id.*].

As of May 9, 2017, no counsel had entered an appearance for Defendant and no answer had been filed. Plaintiff, however, had filed two motions for default judgment[2] [DE 4 & 9] and a motion for clerk's entry of default against Defendant [DE 11]. Default pursuant to Fed. R. Civ. P. 55(a) was entered accordingly by the Clerk of Court on May 9, 2017. [DE 12]. Nothing else was filed in this case until September 20, 2017, when Defendant's counsel both entered their appearances and Defendant filed the instant Combined Motion.

## II.   ANALYSIS

Defendant's instant motion to vacate default and dismiss Plaintiff's claims against it is premised procedurally on an alleged insufficiency of process under Fed. R. Civ. P. 4 and substantively on an alleged failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6), which Defendant argues justifies both vacating the clerk's entry of default and dismissing Plaintiff's complaint in its entirety.

Under Fed. R. Civ. P. 55(c), "[t]he court may set aside an entry of default for good cause . . . ." Indeed, disposition on the merits is preferable to default. *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 631 (7th Cir. 2009). As such, "Rule 55(c)'s 'good cause' standard is a lenient one that does not depend on there being a good excuse for the defendant's failure to appear in a timely manner." *Strabala v. Zhang*, 318 F.R.D. 81, 91 (N.D. Ill. 2016). "A party seeking to vacate an entry of default prior to the entry of final

---

[2] The Court denied Plaintiff's two motions for default judgment because they were prematurely filed before clerk's entry of default. [DE 22 at 2]. Plaintiff filed a third motion for default judgment on October 31, 2017. [DE 23]. That motion remains pending before the Court and will be addressed by separate order as deemed necessary by the presiding judge.

3

judgment must show: (1) good cause for the default; (2) quick action to correct it; and

(3) a meritorious defense to the complaint." *Cracco*, 559 F.3d at 630 (internal citations

omitted).

### A.    Good Cause for Default

Defendant has demonstrated good cause for filing its responsive pleading, in the

form of the instant Combined Motion, more than 21 days after Plaintiff claims

Defendant was served the summons and complaint. *See* Fed. R. Civ. P. 12(a)(1)(A)(i).

The summons was not addressed to any individual. Instead, it was addressed generally

to "U.S. Bank Home Mortgage" at the address of the 4801 Facility, its loan servicing and

payment processing facility where a contracted employee in the mailroom at the 4801

Facility, rather than an individual authorized under the Federal Rules of Civil

Procedure to receive service for a corporation, signed for and accepted it through a

FedEx delivery. *See* Fed. R. Civ. P. 4(h). As a result, Plaintiff's summons and service of

process failed to give proper notice of the complaint to individuals at U.S. Bank who

would have known how to handle the complaint.

Moreover, Plaintiff's motions for default judgment [DE 4 & 9] and her motion for

clerk's entry of default [DE 10] failed to alert Defendant to the lawsuit or its risk of

default because they included no Certificate of Service despite the requirement set forth

in Fed. R. Civ. P. 5(d)(1).[3] Notably, Plaintiff's briefing of the instant motion seems to

suggest—in a run-on sentence that is difficult to decipher—that Defendant had actual

---

[3] Plaintiff's third motion for default judgment, filed on October 31, 2017, after the instant Combined Motion was fully briefed and in which Defendant referenced the missing certificates of service on Plaintiff's first two motions for default judgment, still did not include a Certificate of Service.

notice of the complaint because her counsel spoke with employees of the Defendant by phone "during the months of inaction" and that during those "conversations," the employees advised Plaintiff's counsel that service was noted in Defendant's "system." [DE 19 at 3]. Yet Plaintiff's allegations are not persuasive because she provides no evidence of these "conversations" such as an affidavit or other documentation showing specific dates, names or titles of the employees involved, or topics discussed during the calls. As a result, the record includes nothing to establish that Plaintiff made any effort to inform Defendant of its filings after the complaint.

Plaintiff's actual notice argument is also unpersuasive without any evidence that Defendant willfully ignored Plaintiff's complaint or lied in its brief dated September 20, 2017, when it said that it "only learned of the clerk's default in the past few days and is still attempting to research the events giving rise to the complaint." [DE 17 at 22]; *see also Davis v. Hutchins*, 321 F.3d 641, 646 (7th Cir. 2003) (affirming a district court's refusal to vacate a default under Fed. R. Civ. P. 55(c) because the record included evidence that the defaulting party "exhibited a willful refusal to litigate the case properly," or a "willful choice not to exercise a minimal level of diligence.").

### B.    Quick Action to Correct the Default

Once aware of the default entered in this case, Defendant addressed both the default and the merits of Plaintiff's complaint within days by filing notices of appearance of counsel [DE 12 & 13], a corporate disclosure statement [DE 15], and the instant Combined Motion [DE 16] on September 20, 2017. Admittedly, a large corporation like Defendant should have procedures in place that train frontline

employees, like the mailroom contractor who signed for the summons and complaint at the 4801 Facility, to recognize legal documents and to forward them to an appropriate employee. Yet, an experienced attorney like Plaintiff's counsel should also be able to conduct the simple research necessary to locate a better address for service of such legal documents than a lender's loan servicing and payment address on a borrower's payment coupon book. Accordingly, the Court is convinced both that Defendant did not willfully ignore Plaintiff's complaint and promptly addressed the default.

### C.      Meritorious Rule 12(b) Defenses

Defendant contends that Plaintiff's summons and service of process are both insufficient as a matter of a law leaving this Court without personal jurisdiction over it. In addition, Defendant argues that Plaintiff's complaint, in its entirety, fails to state a claim upon which relief can be granted. As shown below, Defendant's Rule 12(b)(4), 12(b)(5), and 12(b)(6) defenses are meritorious enough to justify vacating the entry of default, but are also meritorious enough to justify dismissing Plaintiff's complaint.

### 1.      Insufficient Summons under Rule 12(b)(4)

A motion under Rule 12(b)(4) challenges the form of the summons. *Miller v. Account Mgmt Servs., LLC*, No. 1:07-CV-231, 2007 WL 4556733, at *2 (N.D. Ind. Dec. 20, 2007). The content and issuance of the summons is governed by Fed. R. Civ. P. 4(a)–(b). "Deficiencies cognizable under Rule 12(b)(4) include errors in naming the proper defendant, failing to specify the number of days allotted for defendant to answer, and failure to obtain a court seal or signature." *Bilal v. Rotec Indus., Inc.*, No. 03 C 9220, 2004 WL 1794918, at *4 (N.D. Ill. Aug. 5, 2004) (citing *O'Brien v. O'Brien & Assoc., Inc.*, 998

6

F.2d 1394, 1400 (7th Cir. 1993)). "A motion challenging sufficiency of process under this rule must point out specific instances where the plaintiff has failed to comply with the requirements of Rule 4." *Id.*

Here, Defendant argues that Plaintiff's summons was facially insufficient and void because it was not addressed to an individual to whom service was allowed.

Federal Rule of Civil Procedure 4(h) governs service of process on corporations, partnerships, or associations and requires service

> (1)(A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or
> (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant[.]

Under Fed. R. Civ. P. 4(e)(1), service may be accomplished by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]" This Court is located in Indiana and service was intended to be made in Kentucky at the 4801 Facility. Thus, service on Defendant could be made pursuant to either Indiana or Kentucky law. *See Zumbrun v. Nat'l Asset & Risk Mgmt., LLC*, No. 1:12-CV-446, 2013 WL 1287331, at *1 (N.D. Ind. Mar. 28, 2013).

Under Indiana Trial Rule 4.6(A)(1), service upon domestic organizations, like Defendant, must be made "upon an executive officer . . . or [upon] an agent appointed or deemed by law to have been appointed to receive service . . . ." Similarly, Ky. R. Civ. P. 4.04(5) provides that "[s]ervice shall be made upon a corporation by serving an

officer or managing agent thereof, or the chief agent in the county wherein the action is brought, or any other agent authorized by appointment or by law to receive service on its behalf."

Whether attempting service under Fed. R. Civ. P. 4(h)(1), Ind. Tr. R. 4.6(A)(1), or Ky. R. Civ. P. 4.04(5), a plaintiff must secure service on an individual. In fact, this Court has previously found service addressed to a corporate entity, not an individual identified in the applicable rules of service, defective. *Zumbrun*, 2013 WL 1287331, at *2; *see also NNDYM IN, Inc. v. UV Imports, Inc.*, No. 3:09–cv–129, 2011 WL 1225573, at *2 (S.D. Ind. Mar. 30, 2011); *Volunteers of Am. v. Premier Auto Acceptance Corp.*, 755 N.E.2d 656, 660 (Ind. Ct. App. 2001). Plaintiff's summons was not directed to any individual, let alone an individual meeting the criteria set forth in the applicable service rules. Additionally, the contracted mailroom employee cannot be identified as one of Defendant's officers, a managing or general agent, or an agent authorized to receive service for Defendant. Therefore, Plaintiff's summons directed to "U.S. Bank Home Mortgage" is void under the Rules precluding personal jurisdiction. Notably, Plaintiff does not even address this defect in her response to the Combined Motion.

Such a procedural defect would be enough to justify dismissal of Plaintiff's complaint. However, Plaintiff's complaint fails as the result of other defects as well.

### 2.    Insufficient Service of Process under Rule 12(b)(5)

A motion to dismiss under Rule 12(b)(5) challenges the sufficiency of service of process. When considering such a motion, the court may review additional affidavits submitted by the parties in addition to the pleadings. *Kimbrell v. Brown*, No. 09-cv-511-

JPG, 2009 WL 5064384, at *1 (S.D. Ill. Dec. 17, 2009). "Once a defendant has challenged the sufficiency of service of process with a motion to dismiss under Fed. R. Civ. P. 12(b)(5), the burden is upon the plaintiff to make a prima facie showing that there was proper service." *Miller v. Deutsche Bank Nat'l Trust Co.*, Cause No. 1:10-CV-2 RM, 2010 WL 1686283, at *1 (N.D. Ind. Apr. 20, 2010) (quoting *Iosello v. Lexington Law Firm*, No. 03-C-987, 2003 WL 21920237, at *2 (N.D. Ill. Aug. 12, 2003). Under Fed. R. Civ. P. 4(m), service must be completed within ninety days of the filing of the complaint. If a defendant is not served in this timeframe, "the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m); *see, e.g.*, *Miller*, 2010 WL 1686283, at *1 (dismissing a lawsuit for failing to serve in 120 days under a prior version of Rule 4(m)). "[A]ctual knowledge of the existence of a lawsuit is insufficient to confer personal jurisdiction over a defendant in the absence of valid service of process." *Mid-Continent Wood Products, Inc. v. Harris*, 936 F.2d 297, 301 (7th Cir. 1991).

As discussed above, Plaintiff argues that her service of process was sufficient based on the contention that Defendant had actual notice of the complaint. Plaintiff suggests that Defendant's actual knowledge of the complaint is evidenced by its filing of the instant Combined Motion. Plaintiff's argument is weak at best, however. First, Defendant's knowledge about the complaint in September 2017 when it filed the Combined Motion does not demonstrate that Defendant had knowledge of the complaint in April 2017 when its responsive pleading would have been due if Plaintiff's alleged service to the 4801 Facility had succeeded. Second, even if Defendant had actual

notice of the lawsuit, Plaintiff's service of process was not directed to a proper agent. Indeed, "[a] litigant bears the consequences of errors by its chosen agent." *Sims v. EGA Prods., Inc.*, 475 F.3d 865, 869 (7th Cir. 2007). However, Defendant did not choose the contracted mailroom employee to be an agent of any kind. He was neither employed by Defendant nor designated as an agent to receive service of process. Therefore, his failure to deliver the summons and complaint to the proper individuals in the company cannot be attributed to Defendant.

Third, a signed return of service constitutes *prima facie* evidence of valid service, but creates a rebuttable presumption that can be overcome by strong and convincing evidence. *Homer v. Jones-Bey*, 415 F.3d 748, 752 (7th Cir. 2005). As delineated above, Defendant has presented strong and convincing evidence to overcome any presumption of service that may exist based upon the March 17, 2017, FedEx receipt of successful delivery to the 4801 Facility. Most notably, the contracted mailroom employee was not an officer or designated agent of Defendant. And even actual knowledge, which Plaintiff has not established, does not negate Plaintiff's obligations of fundamental due process to ensure that service is reasonably calculated to apprise a party of the pendency of an action and provide it with an opportunity to response. *See Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Therefore, Plaintiff's faulty service, directed only to the Defendant company and not a proper individual under the Rules at a location only reasonably calculated to inform the company of borrower payments and other loan servicing issues, not corporate lawsuits, is defective such that dismissal for lack of personal jurisdiction could be justified.

### 3.   Failure to State a Claim under Rule 12(b)(6)

Plaintiff's claims also fail substantively. To survive a motion to dismiss under 12(b)(6), a plaintiff's complaint must provide "enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that is plausible, rather than merely speculative, that he is entitled to relief." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008) (internal quotations omitted). This requires more than just "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570(2007)). In other words, it must state sufficient facts for a court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*

Defendant argues that Plaintiff's complaint, pleaded with minimal facts, brings causes of action that cannot state a claim under Indiana law. Defendant also contends that the complaint does not satisfy the plausibility requirement for pleadings set forth in *Twombly* and *Iqbal*. And lastly, Defendant asserts that some of Plaintiff's claims are duplicative and seek double recovery. Plaintiff disagrees relying heavily on the notice pleading standard set forth in Fed. R. Civ. P. 8.

####   a.   Improper Claims Under Indiana Law

#####   i.   Economic Loss Doctrine and Negligence Claims

Plaintiff's four negligence claims (Counts III–VI) allege financial loss arising from a service contract to maintain the property as part of her mortgage contract with

Defendant. In Indiana, "[t]he economic loss rule applies to bar recovery where a negligence claim is based upon a product's failure to perform as expected and the plaintiff suffers only economic damages." *Am. United Life Ins. Co. v. Douglas*, 808 N.E.2d 690, 704 (Ind. Ct. App. 2004) (internal quotation and citation omitted). This rule makes sense because commercial and contract law are better equipped to address purely economic losses. *Indianapolis-Marion Cty Pub. Library v. Charlier Clark & Linard, P.C.*, 929 N.E 2d 722 730 (Ind. 2010) (citing *Miller v. U.S Steel Corp.*, 902 F.2d 573, 574 (7th Cir. 1990)). Therefore, a defendant is not liable under a tort theory for any purely economic loss caused by its negligence when the relationship between the parties is governed by a contract. *Id.*

Here, Plaintiff claims financial loss, suffering due to payment of monthly servicing fees, and loss of property value in Counts III, IV, VI, and VI. [DE 1 at ¶¶ 50, 51, 55, 59, 62, 66, 67, 71, & 72]. Plaintiff's contention that these damages "resulted following the breach of contract" does not overcome their purely economic nature. [*See* DE 19 at 15]. Indeed, Plaintiff alleges that the economic losses flow from Defendant's alleged breach of contract. Thus, the economic loss doctrine dictates that these losses shall be accounted for through a breach of contract claim, not negligence claims.

Similarly, Plaintiff's alleged property damage resulting from Defendant's alleged failure to maintain the subject property under the relevant service contract is also barred because the property damages is alleged to have resulted from a breach of contract. *See Indianapolis-Marion County Public Library*, 929 N.E.2d at 732. Maintenance of

the subject property was the service integral to Plaintiff's service contract. It did not

arise from an independent duty owed to Plaintiff from Defendant.

Therefore, Plaintiff's negligence claims are barred under Indiana's economic loss

doctrine. Any financial and property damage resulting from Defendant's alleged breach

of contract can only be addressed through contract claims.

### ii.      Conversion Claim

As defined by Ind. Code § 35-43-4-3, conversion is "the knowing or intentional

exertion of unauthorized control over the property of another." *McKeighen v. Daviess*

*County Fair Bd.*, 918 N.E.2d 717, 723 (Ind. Ct. App. 2009). In Count IX of Plaintiff's

complaint alleging conversion, which incorporates by reference all earlier allegations,

Plaintiff pleads that she has legal title to her property and the right to possess her

property. [DE 1 at 16, ¶¶83–85]. Yet in pleading Count VI for negligent entrustment,

Plaintiff alleged that she "entrusted her property to U.S. Bank, its affiliates, its agents, its

property management company, and/or 5-Brothers . . . ." [*Id.* at 14, ¶ 63].

Plaintiff correctly distinguishes the facts in *McKeighen* from those in this case. In

*McKeighen*, the court found that the plaintiff had no legal right to the prize money, or

property, alleged converted by the defendant. 918 N.E.2d at 723. Here, Plaintiff had

legal title to the property. Yet Defendant does not dispute Plaintiff's legal right to the

property. Instead, Defendant argues that Plaintiff's has not pleaded unauthorized

control of her property. In fact, paragraph 63 of Plaintiff's complaint alleges that she

authorized Defendant's control of her property by entrusting it to Defendant and

related entities. Both cannot be true. Therefore, Plaintiff's conversion claim does not state a claim for relief can be granted as pled.

### iii.    Punitive Damages

Defendant argues that punitive damages are not a proper cause of action based on the dictionary definition of "damages" and "punitive damages." Defendant also expects the Court to infer the same from a non-binding case in the Northern District of California, which stated that "[t]o satisfy the federal pleading standard for punitive damages, a plaintiff may include a 'short and plain' prayer for punitive damages . . . ." *Alejandro v. ST Micro Elecs., Inc.*, 129 F. Supp. 3d 898, 917 (N.D. Cal. 2015). Defendant's request is a stretch at best.

First, the court in *Alejandro* refused to dismiss the plaintiff's request for punitive damages after analyzing whether the complaint at issue satisfied California's pleading requirements for punitive damages. The question of whether or not punitive damages technically constituted a cause of action was not at issue. Second, the *Alejandro* court's use of the word "prayer" to describe punitive damages is also paralleled in the same opinion by references to the plaintiff's "claim of punitive damages." *Id.* Thus, any inference about the proper role of punitive damages from *Alejandro* is not persuasive.

Moreover, "[p]leadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). Plaintiff's punitive damages claim is the last count of her complaint and is based upon Defendant's allegedly "grossly reckless and wanton conduct" and "willful, wanton and/or reckless, and/or . . . engaged in with conscious disregard for the rights of Plaintiff." [DE 1 at 20-21, ¶¶ 104, 109]. Additionally, Plaintiff's punitive damages

claim repeats allegations of alleged misconduct identified in previous counts rather than pleading new facts relevant only to the punitive damages. Thus, it is reasonable to infer that Plaintiff's punitive damages "count" is not intended as a separate cause of action, but as a request for a specific remedy in light of the conduct alleged in the other counts of the complaint.

As such, Plaintiff's decision to label her prayer for punitive damages as a "count" does not alone doom her request for punitive damages and should therefore be allowed to stand as a "short and plain prayer" for relief. *See Alejandro*, 129 F. Supp. 3d at 917.

### b.    Failure to Comply with Federal Pleading Standards

### i.    Defendant's and Third-Party Conduct

Plaintiff's complaint generally alleges that "Defendant U.S. Bank has retained a management company and/or a company called 5-Brothers to maintain the property which has been in the sole control of the Defendant . . . ." [DE 1 at 2, ¶ 6]. Throughout the rest of the complaint, Plaintiff references "the Defendant US Bank, its affiliates, its agents, its property management company, and/or 5-Brothers" collectively as "Defendant." [*See Id.*, ¶ 7]. Notably, only U.S. Bank Home Mortgage is included in the complaint's caption as a defendant. In light of Fed. R. Civ. P. 10(a), which requires that the name of all parties be included in the title of the complaint, Plaintiff has only alleged claims against U.S. Bank, not 5-Brothers or any other entity, in this action.

Yet by lumping U.S. Bank together with 5-Brothers as "Defendant," or in other words by employing group pleading, Plaintiff brings into question who she seeks to hold liable for the misconduct and resulting damages alleged in her complaint.

Furthermore, Plaintiff does not distinguish conduct by U.S. Bank and 5-Brothers leaving U.S. Bank and this Court confused as to what exactly her complaint alleges against U.S. Bank as the sole defendant in this action.

In her response brief, Plaintiff contends that "5-brothers [sic] were [sic] in an agency relationship with US Bank, just as the contract person who received the summons was also in an agency relationship with US Bank the defendant." [DE 19 at 16]. Under Indiana law[4], an agency relationship is established when there is "(1) manifestation of consent by the principal, (2) acceptance of authority by the agent, and (3) control exerted by the principal over the agent." *Bauermeister v. Churchman*, 59 N.E.3d 969, 974 (Ind. Ct. App. 2016). "One who asserts that there was an agency relationship has the burden of proving its existence." *Id.* (citing *Smith v. Brown*, 778 N.E.2d 490, 495 (Ind. Ct. App. 2002)). "These elements may be proven by circumstantial evidence, and there is no requirement that the agent's authority to act be in writing." *Id.* (citing *Demming v. Underwood*, 943 N.E.2d 878, 884 (Ind. Cot. App. 2011), *trans. denied*.

While it is true that Plaintiff's complaint does not separate the alleged conduct of U.S. Bank from that of non-party 5-Brothers, Plaintiff's complaint does allege at least one fact to suggest that 5-Brothers is an agent of U.S. Bank despite Defendant's

---

[4] In their briefing the agency argument, both parties improperly rely on cases interpreting agency principles under Illinois law, which is not binding on this Court. Moreover, neither party compares Indiana's agency law to the Illinois law represented in the cases they cite (*e.g.*, *Rawoof v. Texor Petroleum Co., Inc.*, 521 F.3d 750, 758 (7th Cir.2008) (applying Illinois law); *Frazier v. U.S. Bank Nat'l Ass'n.*, No. 11 C8775, 2013 WL 1337263, at *4 (N.D. Ill. Mar. 29, 2013); *Sindles v. Saxon Mrtg. Servs., Inc.*, No. 11 C 7224, 2012 WL 1899401, at *9 (N.D. Ill. May 22, 2012); *Sefton v. Toyota Motor Sales U.S.A.*, No. 09 C 3787, 2010 WL 1506709, at *3 (N.D.Ill. Apr.14, 2010); *Whitley v. Taylor Bean & Whitacker Mortg. Corp.*, 607 F.Supp.2d 885, 895 (N.D.Ill.2009)) so as to argue that Illinois agency law should be persuasive here. Therefore, the Court will apply Indiana law.

contention that she alleged none. Specifically, Plaintiff alleges that U.S. Bank retained a management company called 5-Brothers at paragraph 6 of her complaint. Based on a liberal construction in favor of Plaintiff, Plaintiff has arguably alleged that the business transaction of retaining 5-Brothers as a management company manifests U.S. Bank's consent to an agency relationship.

However, Plaintiff's poor grammatical construction of the same paragraph makes it impossible to discern whether she is alleging that 5-Brothers "was in the sole control of" U.S. Bank or that Plaintiff's property was "in the sole control of" U.S. Bank. Similarly, Plaintiff's comma placement confuses the question of whether U.S. Bank, presumably "Defendant" in paragraph 6, "charged the Plaintiff . . . at least $6600.00 for the care and maintenance" or if 5-Brothers did that. These confusing statements attempting to distinguish the conduct of U.S. Bank and 5-Brothers do not plausibly allege that 5-Brothers accepted U.S. Bank's control over it or that U.S. Bank actually controlled 5-Brothers' behavior. *See Bauermeister*, 59 N.E.3d at 974. Additionally, even if the Court were to infer that Plaintiff intended to plead that U.S. Bank solely controlled 5-Brothers conduct in relation to her property, her statement is a bald conclusory statement with no supporting facts. Thus, it cannot satisfy the federal plausibility standard for pleading. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. With nothing else in the complaint regarding a potential agency relationship between U.S. Bank and 5-Brothers other than these allegations in paragraph 6, all of Plaintiff's claims fail for lack of clear allegations of an agency relationship between U.S. Bank and 5-Brothers and

failure to distinguish the conduct between the two entities precluding full notice to U.S. Bank as to the specific claims against it in this action.

### ii.      Breach of Contract

Plaintiff's breach of contract similarly fails to meet the *Iqbal/Twombly* plausibility pleading standard. In Count VII, Plaintiff alleges generally that with the assignment, sale, or transfer of the servicing of her mortgage loan to U.S. Bank in January 2005, "Defendant agreed to properly maintain her property." [DE 1 at 14–15, ¶ 74]. Plaintiff neither attaches a contract nor quotes contract provisions in support of that allegation. Plaintiff continues by alleging that "[i]n contradiction and in violation of the contract provision"—a contract provision not specified by citation or quotation—"Defendant breached the contract and contractual provisions . . . ." [*Id.* at 15, ¶ 75]. Again, Plaintiff's allegations here are bare-bone conclusions that a breach occurred without sufficient factual support to state a plausible claim or notify Defendant as to the nature of the claims against it. Therefore, it cannot survive as pleaded.

### iii.      Statutory Claims

Plaintiff's claims for improper calculation of mortgage payments, interest and/or late fees under Indiana statutes also amount to an improper "unadorned, the-defendant-unlawfully-harmed-me, accusation." *See Iqbal*, 556 U.S. at 678. Ind. Code 24-4.5-3, Sections 201, 501, and 508 are violated when mortgage loans charge interest rates in excess of 25%. While Plaintiff's complaint alleges that U.S. Bank charged "Plaintiff interest on an artificially high principal balance as a result of assessing improper late fees and costs" and implies this amounted to "usurious interest," it says nothing about

what, when, or how U.S. Bank assessed improper fees and costs or what the allegedly usurious interest rate was. Without such facts, this claim is also insufficiently pled under the *Iqbal/Twombly* plausibility standard.

### iv.    Fair Debt Collection Practice Act Claim

The Fair Debt Collection Act ("FDCPA") protects consumers from abusive debt collection practices. 15 U.S.C. § 1692. To obtain relief under the FDCPA, a plaintiff must plead and prove that (1) she is a natural person or consumer harmed by violations of the Act; (2) her debt arises out of a transaction for primarily personal, family, or household purposes; (3) the defendant is a debt collector as defined by the Act; and (4) the defendant debt collector violated the Act. *Maldonado-Rodriguez v. Citibank, N.A.*, No. 2:12-CV-150 JD, 2013 WL 350814, at *2 (N.D. Ind. Jan. 28, 2013). Failure to plead any one of these elements dooms a plaintiff's FDCPA claim.

Here, Defendant contends that Plaintiff has not allege that it is a debt collector as defined by the Act. A creditor collecting or attempting to collect a debt that was not in default when it obtained the debt is explicitly excluded from the Act's definition of "debt collector." 15 U.S.C. § 1692a(6)(F)(iii); *see also Carter v. AMC, Inc.*, 645 F.3d 840, 844 (7th Cir. 2011); *Puncochar v. Revenue Mgmt. of Ill. Corp.*, No. 15-cv-07089, 2017 WL 1208427, at *2 (N.D. Ill. Mar. 31, 2017). Plaintiff's complaint alleges insufficient facts to establish whether Defendant obtained her loan before or after she defaulted. In fact, Plaintiff does not even allege a default date or a date when she cured any such default. Her complaint only alleges a mortgage loan origination date of September 30, 2004, and a January 1, 2005, date for the assignment, sale, or transfer of the loan to Defendant. [DE

1 at 14–15, ¶ 74]. As such, Plaintiff has succeeded in pleading that Defendant was a creditor excluded from the statutory definition of "debt collector," but she has not alleged facts sufficient to support her conclusion that Defendant was a "debt collector." By failing to plead a mandatory element of an FDCPA claim, Plaintiff's FDCPA claim is insufficient and should be dismissed.

**v.     Good Faith and Fair Dealing**

Under Indiana law, implied covenants of good faith and fair dealing apply to contracts in limited situations, such as insurance or employment contracts. *Allison v. Union Hops., Inc.*, 883 N.E.2d 113, 123 (Ind. Ct. App. 2008) (citing *Lake County Trust Co. v. Wine*, 704 N.E.2d 1035, 1039 (Ind. Ct. App. 1998). "Only "[i]f the contract is ambiguous or expressly imposes such a duty on the parties [will] the courts will impose such a duty. *Id.* (citing *First Fed. Sav. Bank of Ind. v. Key Markets, Inc.*, 559 N.E.2d 600, 604 (Ind. 1990)); *see also Coates v. Heat Wagon, Inc.*, 942 N.E.2d 905, 918 (Ind. Ct. App 2011).

Plaintiff's claim for breach of the covenant of good faith and fair dealing makes no reference to an insurance or employment contract. Plaintiff's complaint does not even include a copy of the contract at issue as discussed above. Moreover, she does not identify any relevant provisions in the contract and pleads nothing to suggest the contract at issue is ambiguous. Plaintiff's claim relies solely upon a "duty of the lender to keep an accurate accounting of the Plaintiff's loan" that she alleges is implicit in every Indiana contract." [DE 1 at 15, ¶¶ 78–79]. Yet Plaintiff has not provided any authority in her complaint or in her instant response brief to support this claim or to overcome *Allison* and *Key Markets*, which suggest that parties to an unambiguous

mortgage loan contract without explicit provision for a duty of good faith and fair dealing cannot be held to such a duty. As such, Plaintiff appears to be suggesting the contract is actually unambiguous. What she has not pled is the existence of a contract for which Indiana courts will impose the duty of good faith and fair dealing she alleges Defendant breached. Therefore, Plaintiff has not raised a proper claim for breach of the implied covenant of good faith and fair dealing.

### vi. Intentional and/or Negligent Infliction of Emotional Distress

A proper claim for negligent infliction of emotional distress ("NIED") requires a direct physical impact. *Miller v. May*, 656 N.E.2d 1198, 1200 (Ind. Ct. App. 1995). "[T]he direct impact sustained by the plaintiff must necessarily be a 'physical' one." *Ross v. Cheema*, 716 N.E.2d 435, 437 (Ind. 1999). Plaintiff's complaint only alleges economic loss and property damage, not a physical impact, as the source of her emotional distress. [DE 1 at 20, ¶¶ 101–02]. Plaintiff's complaint does not even imply a physical impact by pleading that she apply for Social Security disability benefits as the result of Defendant's conduct because she does not connect her application to any physical impairment. Accordingly, Plaintiff has failed to state a claim for NIED distress.

Plaintiff has also failed to plead all the elements of intentional infliction of emotional distress ("IIED"). IIED is committed by "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another . . . ." *Ledbetter v. Ross*, 725 N.E.2d 120, 123 (Ind. Ct. App. 2000). The requirements to prove this tort are "rigorous." *Id.* at 124 (citations omitted). IIED is found where there is

"conduct exceeding all bounds usually tolerated by a decent society [and causing] mental distress of a very serious kind." *Id.* Yet even extreme and outrageous conduct that is not intentional cannot support an IIED claim. *Cullison v. Medley*, 570 N.E.e2d 27, 31 (Ind. 1991). For instance, a defendant's knowledge of a homeowner's dislike of guns did not support a claim for IIED when the defendant trespassed into the plaintiff's home while wearing a gun. *Id.* Here, Plaintiff has not pleaded anything that can be construed as intent. Her complaint alleges emotional distress generally, but not Defendant's intent to cause that distress.

Even if Plaintiff's complaint could be read to have pled intent, she has not pled extreme and outrageous conduct. All that Plaintiff has specifically alleged against Defendant appears to be that it failed to properly secure and maintain her property, which cannot be said to exceed all bounds usually tolerated in a decent society based on other cases addressed in Indiana. For instance, a lender's intentional mishandling of a loan modification application has been found not to implicate IIED. *Jaffri v. JPMorgan Chase Bank, N.A.*, 26 N.E.2d 635, 640 (Ind. Ct. App. 2015). On the other end of the spectrum, sexual abuse of a 10-year old by a layperson teaching Catholic CCD classes was deemed extreme and outrageous conduct.[5] *Tucker v. Roman Catholic Dioceses of Lafayette-in-Indiana*, 837 N.E.2d 596, 603 (Ind. Ct. App. 2005). Clearly, the conduct alleged against Defendant does not approach the outrageousness in sexual abuse of a

---

[5] While the court in *Tucker* found that the sexual abuse was extreme and outrageous conduct, it still held that the plaintiff had failed to state a claim upon which relief could be granted because the complaint included no allegation that defendant Diocese intended to emotionally harm the plaintiff. *Tucker*, 837 N.E.2d at 603.

child by a religious teacher. It is analogous, however, to a mishandling of a loan modification application. Lacking allegations of both Defendant's intent to emotionally harm Plaintiff as well as any extreme and outrageous conduct, Plaintiff's complaint fails to state a claim for IIED.

### vii.    Fraud Claims

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake[, but malice], intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "A complaint alleging fraud must provide 'the who, what, when, where, and how.'" *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007).

Plaintiff's fraud and fraudulent inducement claims are based on Defendant's alleged misrepresentations, both in writing and verbally from 2005 until the present, that her home and property were properly maintained both in writing and verbally from 2005 until the present. Yet the complaint does not allege who made the misrepresentations, what they specifically said, when they were specifically made. As such, Plaintiff has not satisfied Rule 9(b) pleading with particularity standard leaving Defendant in the dark as to the complete nature of the claims against it. Moreover, Plaintiff's failure to provide the necessary particularity fails to assure that her fraud claims are "responsible and supported, rather than defamatory and extortionate" as Rule 9(b) is intended to do. *See id.*

Further, the complaint does not clearly allege all the elements of fraud claims.

> To constitute a misrepresentation [on] a ground of fraud . . . the party complaining must have been actually deceived . . . generally . . . in respect of facts equally open to the observation of both parties, and concerning which the party complaining, had he exercised ordinary prudence, could have attained correct knowledge.

*Pugh's IGA, Inc. v. Super Food Servs., Inc.*, 531 N.E.2d 1194, 1198–99 (Ind. Ct. App. 1988) (quoting *Frenzel v. Miller* (1871), 37 Ind. 1, 17). Plaintiff appears to plead that she did not know the truth of Defendant's purportedly false statements [DE 1 at 7, ¶ 36; at 9, ¶ 45], but separately pleads that she disputed Defendants' statements that her home was properly maintained "more than once by phone, and now by letter, and by her attorney . . . ." [*Id.* at 6, ¶ 32]. These two alleged facts are contradictory and therefore cannot establish actual deceit.

The lack of particularity in Plaintiff's fraud claims combined with the failure to plead actual deceit prevent Plaintiff from stating proper claims for fraud.

### c.    Duplicative Counts

Defendant argues that Plaintiff's two fraud claims (Counts I and II) and her four negligence claims (Counts III, IV, V, and VI) are duplicative and should be stricken. Indeed, "[c]ourts have authority to dismiss duplicative claims if they allege the same facts and the same injury." *Barrow v. Blouin*, 38 F. Supp. 3d 916, 920 (N.D. Ill. 2014); *see also Wade v. Collier*, 783 F.3d 1081, 1088 (7th Cir. 2015) (dismissing an equal protection claim because it simply reworded a malicious prosecution claim). As Defendant contends, Plaintiff's fraud and negligence claims are largely based on the same facts and injuries. Therefore, dismissal may indeed be warranted. However, Plaintiff's fraud and negligence claims have already been deemed insufficient both procedurally and

substantively making it unnecessary to strike them. Plaintiff should attempt to correct any improper duplication in her pleading should she decide to amend her complaint.

## III.  CONCLUSION

For the reasons discussed above, the undersigned finds that Defendant has met its burden under Fed. R. Civ. P. 55(c) to justify vacating the Clerk's entry of default. Additionally, the undersigned finds that Plaintiff's complaint lacked proper service under Fed. R. Civ. P. 12(b)(4) and (5) and that all twelve of Plaintiff's substantive claims failed to state a claim under Fed. R. Civ. P. 12(b)(6). Count XIII for punitive damages may have survived substantively, but cannot survive without any underlying claims.

Therefore, the undersigned **RECOMMENDS** that the Court **GRANT** Defendant's Combined Motion to Vacate Default Under Rule 55(c) and Motion to Dismiss Under Rules 12(b)(4), (5), and (6). [DE 16]. Specifically, the undersigned **RECOMMENDS** that the Court **VACATE** the Clerk's entry of default [DE 11], and **DISMISS WITHOUT PREJUDICE** all counts in Plaintiff's complaint [DE 1] with an opportunity to re-plead. *See, e.g., Bausch v. Stryker Corp., 630 F.3d 546, 562 (7th Cir. 2010).*

> **NOTICE IS HEREBY GIVEN that within fourteen (14) days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. Fed. R. Civ. P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.**

> **SO ORDERED.**

Dated this 10th day of August 2018.

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge
